# **Exhibit 1**

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF HENRICO

KASHYAP "KASH" PATEL          )
                              )
        Plaintiff,            )
                              )
v.                            )          Case No. CL19-6745
                              )
                              )          **TRIAL BY JURY**
POLITICO, LLC,                )          **IS DEMANDED**
NATASHA BERTRAND,             )
                              )
-and-                         )
                              )
ROBERT L. ALLBRITTON          )
                              )
        Defendants.           )
_____)

# COMPLAINT

Plaintiff, Kashyap "Kash" Patel ("Plaintiff" or "Kash"), by counsel, files the following Complaint against defendants, Politico, LLC ("Politico"), Natasha Bertrand ("Bertrand") and Robert L. Allbritton ("Allbritton"), jointly and severally.

Plaintiff seeks (a) compensatory damages and punitive damages in an amount not less than **$25,350,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from October 23, 2019 to the date of Judgment at the rate of six percent (6%) per year pursuant to § 8.01-382 of the Virginia Code (1950), as amended (the "Code"), and (c) court costs – arising out of Defendants' defamation and common law conspiracy.

1

# I. **INTRODUCTION**

1.       We live in the era of weaponized media.  The days of the mild-mannered reporter – covering a beat, gathering facts and truthfully reporting about "the news that's fit to print" – are over.  The venerable "Fourth Estate" has been replaced by partisan hacks and character assassins who work to advance the interests and agendas of dark money.  One of the very worst offenders in the business is "Politico".

2.       This case is about Politico's malicious efforts in 2019 to target and destroy the stellar career and reputation of a dedicated attorney, senior advisor and civil servant.  In a series of articles and tweets, Politico, directly and by implication, falsely accused Kash Patel of lying, deceit and unethical conduct.[1]  The qualities disparaged by Politico – Kash's honesty, veracity, integrity, ethics and performance as an attorney and a member

---

[1]       *See, e.g., Carwile v. Richmond Newspapers*, 196 Va. 1, 8, 82 S.E.2d 588 (1954) ("Every false and unauthorized imputation, spoken, written, or printed which imputes to a business or professional man conduct which tends to injure him in his business or profession is libelous and actionable without allegation or proof of special damages.  Hence, words and statements which charge an attorney at law with unethical or unprofessional conduct and which tend to injure or disgrace him in his profession are actionable *per se*.") (cited in *Fleming v. Moore*, 221 Va. 884, 890, 275 S.E.2d 632 (1981) ("because an attorney is required to adhere to the disciplinary rules, charging an attorney with unethical conduct is defamatory *per se*"); *id. Tronfeld v. Nationwide Mutual Insurance Company*, 272 Va. 709, 713, 636 S.E.2d 447 (2006) (insurance adjuster's statements that attorney "just takes people's money" and clients received less for their claims because of attorney's services were actionable); *Donner v. Rubin*, 2008 WL 8201377, at * 6 (Chesapeake Cir. 2008) (defendant's letter falsely accused the plaintiff, a lawyer, of "unethical and unprofessional conduct", various "frivolous actions", and suggested that "plaintiff could be subjected to disciplinary proceedings by the State Bar" – demurrer overruled); *Foreman v. Griffith*, 81 Fed.Appx. 432, 433 (4th Cir. 2003) ("The primary accusation against Foreman [a Deputy City Attorney] in the Report was that he engaged in unethical favoritism of Tidewater Towing, Inc. at the City's expense and to enrich himself.  Foreman alleges that the accusation is false and damaged his professional reputation."); *Cretella v. Kuzminski*, 640 F.Supp.2d 741, 747 (E.D. Va. 2009) (statement "questioning Plaintiff's ethical conduct as a practicing attorney, accusing him of the criminal act of extortion, and stating that Plaintiff had been discharged from his employment with a law firm as a result of such conduct").

of the President's National Security Council (NSC)[2] – are peculiarly valuable to Kash and are absolutely necessary in the practice and profession of any lawyer and senior policy advisor.   Politico intentionally published the false statements in order to undermine Kash's credibility and impair his ability to serve the United States of America and the President.

3.      In this action, Kash seeks compensatory damages for the insult, pain, embarrassment, humiliation, mental suffering, and injury to his professional and personal reputations caused by the mass publication of Politico's venomous statements.  Because Politico, Bertrand and Allbritton acted intentionally and with actual malice, ill-will, spite and an unbridled desire to injure, Kash also seeks an award of punitive damages to punish these Defendants and to deter other so-called "journalists" from using their pens as swords in a similar way.

## II.  PARTIES

4.      Kash Patel graduated from the University of Richmond in 2002 with a B.A. in history and criminal justice.  He obtained an International Law Certificate from University College London Faculty of Laws in 2004.  Kash earned his Juris Doctor from Pace University School of Law in 2005.  He is admitted to the Bars of the State of Florida and the State of New York, and is licensed and in good standing.  Kash served for several years as assistant public defender with the Miami-Dade Public Defender's Office.  In 2009, he became Assistant Federal Public Defender for the Southern District of Florida.

---

[2]      The NSC is the President's principal forum for considering national security and foreign policy matters with his senior national security advisors and cabinet officials.  Since its inception under President Truman, the Council's function has been to advise and assist the President on national security and foreign policies.  The Council also serves as the President's principal arm for coordinating these policies among various government agencies. [https://www.whitehouse.gov/nsc/].

3

He tried federal jury trials involving charges of international drug trafficking, murder (death penalty waived), fraud, bulk cash smuggling, arson, and firearms. He organized and conducted international investigations in 6 countries, engaged in foreign relations with governments to secure witnesses and evidence, and handled pre-trial matters on cases ranging from multi-million-dollar fraud, Middle-East arms trafficking, human trafficking, as well as wiretap and document intensive cases. In 2014, Kash joined the United States Department of Justice (DOJ), National Security Division (NSD) – Counter Terrorism Section, as a Terrorism Prosecutor. In this important position, he ran a wide range of high-profile counterterrorism prosecutions; utilized sensitive and restricted intelligence from across the intelligence community (IC) to prosecute international terrorism suspects in the United States and in foreign courts of law. Kash successfully investigated, prosecuted, and incarcerated dozens of international terrorists, led prosecutions of ISIS, Al-Qaeda (AQ), Al-Shabab (AS), Al-Nusra Front (ANF), and other known terrorist organizations. Kash assisted in the prosecution and conviction of 12 AS members involved in the World Cup Bombings in Uganda, which killed 74 individuals including one American. He led a law enforcement operation to monitor and dismantle an international ISIS network that spanned Europe, the Middle East and the homeland; and assisted in convictions in Switzerland and in multiple jurisdictions in the, U.S. He was a member of the prosecution team for high profile prosecutions, including the attacks on the United States Special Mission Compound in Benghazi, Libya, ISIS leadership members around the World, and Westgate Mall attacks in Kenya. Over many years, Kash built trust and strong relationships throughout the IC, engaged directly with foreign heads of state, leaders of the military, and ambassadors to prosecute dozens of terrorists

globally.  In 2015, he received the Central Intelligence Agency Award (HUMINT) for combating terrorism in East Africa.  He was the only member of DOJ to receive the award.  In 2017, Kash received the AAG Award for Excellence (DOJ) for his successful investigation, prosecution, and convictions of 12 AS terrorists responsible for the 2010 World Cup Bombings.  Between March 2016 and April 2017, Kash served on the Department of Defense (DOD), Joint Interagency Task Force – National Capital Region, as the DOJ's liaison officer (LNO) to the Special Operations community.  Embedded with Tier I Special Forces operators at a secure facility, Kash represented DOJ senior leadership interests to the Joint Special Operations Command (JSOC), where, *inter alia*, he led global collaborative targeting efforts against international terrorists.  In April 2017, Kash joined the Staff of the United States House Permanent Select Committee on Intelligence (HPSCI) (the "House Intelligence Committee"),[3] as Senior Counsel for Counterterrorism (April 2017 to March 2018) and National Security Advisor (March 2018 to January 2019).  Kash spearheaded the House Intelligence Committee's investigation of Russian interference in the 2016 Presidential election.  He also lead a top-priority investigation into FISA abuse and created an investigative plan that led to national disclosure of Steele dossier funding.  As staff counsel, Kash was responsible for identifying, locating, and successfully acquiring hundreds of thousands of documents from across the IC and private sectors to further the investigations.  He conducted over 70 interviews of former/current high-ranking (including cabinet-level) government officials and private citizens.  He led the Committee's investigation and discovered abuses of

---

[3]      The House Intelligence Committee oversees the nation's intelligence agencies, including components of the Departments of Defense, Homeland Security, Justice, State and Energy.  Most of the agencies and individuals subject to oversight by the Committee live and work in Virginia.

power by high-ranking officials within the Federal Bureau of Investigation (FBI) and DOJ. He also formulated strategy to hold individuals accountable for violations of law and policy. In February 2019, Kash accepted a position on the National Security Council's Directorate of International Organizations and Alliances. In July 2019, Kash was promoted to the position of Senior Director of the Counterterrorism (CT) Directorate of the National Security Council (NSC). In connection with his position, Kash holds a Top Secret/SCI security clearance.

5.      In October 2019, before Politico, Bertrand and Allbritton savagely defamed him, Kash enjoyed an excellent reputation amongst colleagues, members of Congress and the IC, as a brilliant attorney, trusted advisor, staunch proponent and defender of the rule of law, and CT expert.

6.      Defendant, Politico, is a limited liability company organized under the laws of Delaware. One or more of Politico's members are citizens of the District of Columbia. Politico's principal office and principal place of business is Virginia. Politico is registered to transact business in Virginia (VA SCC Id. No. T045201-3); it maintains a registered office and registered agent in Glen Allen, Virginia (Henrico County); it operates an active website, https://www.politico.com/, and targets Virginians in Henrico County and elsewhere every minute of every day with advertisements of all kinds, articles, an online magazine, blogs, columns, newsletters, a "playbook", job offerings, and news alerts. Politico made $113,000,000.00 in 2018. Upon information and belief, Politico earns millions of dollars in revenues from its Virginia advertisements, subscribers and customers. As part of its business, Politico operates a Twitter account, **@Politico**. Politico has 3,980,000 followers on Twitter. Politico also transacts business

via Facebook. Over 1,893,571 people follow Politico on Facebook. Politico has conducted substantial business in Virginia for many years. The articles and tweets at issue in this case, identified *in haec verba* below, were published and read in Henrico County. *See, e.g., Davis v. Heflin*, 130 Va. 169, 172, 107 S.E. 673 (1921) ("A letter is deemed to be published both where it is posted and where it is received and opened") (quotation an citation omitted); *Galustian v. Peter*, 561 F.Supp.2d 559, 565 (E.D. Va. 2008) ("the place of publication is deemed to be the place where the email was received (i.e., opened and read)."); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 776 (1984) (""[f]alse statements of fact harm both the subject of the falsehood *and* the readers of the statement ... The tort of libel is generally held to occur wherever the offending material is circulated. Restatement (Second) of Torts § 577A, Comment a (1977). The reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous. The communication of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished.").

7.     Defendant, Bertrand, is an agent and employee of Politico. She covers "national security" issues. She is also a contributor to extreme left-wing programs, such as those broadcast by MSNBC. Previously, Bertrand was a staff writer for the *Atlantic*. [https://www.politico.com/staff/natasha-bertrand]. Bertrand operates a Twitter account, **@NatashaBertrand**, which she uses to smear Politico's opposition. Bertrand has 554,000 followers on Twitter. At all times relevant to this case, Bertrand acted as an agent of Politico within the scope of her employment. Politico authorized, approved and

ratified the false and defamatory statements about Kash that were brazenly and recklessly published by Bertrand both online and via social media.

8. Defendant, Allbritton, is a citizen of Virginia. He is the publisher and executive chairman of Politico. [https://www.politico.com/staff/robert-l-allbritton]. Allbritton edited, published, instigated, directed and ratified the defamation at issue in this action.

9. Fiona Hill ("Hill") is a former senior advisor and european and russian affairs specialist who served on the NSC between April 2017 and July 2019.

10. Alexander Vindman ("Vindman") is Director of European Affairs at the NSC. He lives in Virginia.

11. Adam Schiff ("Schiff") is the current chairman of the House Intelligence Committee. Schiff is the Democratic congressman who was infamously pranked by two Russian comedians who offered to provide him nude photos of President Trump. [https://www.realclearpolitics.com/video/2018/02/06/russian_comedians_prank_call_rep _adam_schiff_promise_him_naked_photos_of_trump_from_fsb.html]. Schiff is leading the impeachment inquisition currently going on before the House Intelligence Committee. Schiff has been described as a congenital liar and a inveterate leaker. His extreme bias towards the President of the United States is open and notorious. [https://twitter.com/repadamschiff?lang=en].

12. On October 14, 2019, Hill appeared for a closed-session interview before a select group of Representatives in Room HVC-304, Capitol Visitor Center.

13. On October 29, 2019, Vindman appeared for a closed-session interview before a select group of Representatives in Room HVC-304, Capitol Visitor Center.

14.     In conducting the closed-door interviews of Hill and Vindman, Schiff completely ignored forty-five (45) years of bipartisan procedures, intentionally ignored the custom and course of dealing established in and by prior impeachment inquiries, violated the public's First Amendment right of access and hid the proceedings from the American public, applied "Schiff's Rules of Evidence" – meaning no rules, and refused to afford and extend basic constitutional safeguards, such as the right to present evidence, the right to confront accusers and to cross-examine witnesses, so as to ensure that the interviews were conducted in such a way as to promote the constitutional interests fundamental fairness and due process.

15.     Schiff conducted the interviews like a Star Chamber or Kangaroo Court, and, in so doing, stripped the witnesses of any privilege or immunity from defamation that they may have enjoyed.[4]

16.     Schiff conducted the closed-door interviews with one goal in mind – to create click-bait headlines and soundbites to feed to his co-conspirators and media sympathizers.

17.     Between October 14, 2019 and November 8, 2019, Politico and Bertrand colluded, collaborated and conspired with Schiff to defame Kash. Schiff, or members of his staff or aides acting at his direction, leaked to Bertrand the closed-door testimony that Hill and Vindman gave in the subfloor of the Capitol Visitor Center. The leaks occurred in real-time. Schiff leaked the testimony to Bertrand because Schiff knew that it would be a violation of House Rules and Committee Rules for Schiff to publish the substance of

---

[4]     Because Schiff's closed-door interviews were not conducted before a quasi-judicial body or as part of a judicial proceeding, the testimony of Hill and Vindman is not protected by any privilege.

the testimony himself.  The joint collaborative purpose of the leaks was to publish Hill

and Vindman's false and defamatory statements, including Hill and Vindman's egregious

personal attacks on Kash, so as to further Schiff and Politico's interests in harming the

President and advancing the impeachment inquisition.  In furtherance of the conspiracy,

Bertrand secretly communicated with Schiff or his staff via encrypted email, including

protonmail, and messenging services, such as Signal.[5]

### III.  JURISDICTION AND VENUE

18.     The Circuit Court for the County of Henrico has jurisdiction of this matter

pursuant to § 17.1-513 of the Virginia Code (1950), as amended.

19.     The Defendants are subject to personal jurisdiction in Virginia pursuant to

Virginia's long-arm statute, § 8.01-328.1(A)(1), (A)(3) and (A)(4) of the Code, as well as

the Due Process Clause of the United States Constitution.  The Defendants are subject to

general personal jurisdiction and specific personal jurisdiction in Virginia.  They all have

minimum contacts with Virginia such that the exercise of personal jurisdiction over them

comports with traditional notions of fair play and substantial justice and is consistent with

the Due Process Clause of the United States Constitution.

20.     Venue is proper in the Circuit Court for the County of Henrico pursuant

to §§ 8.01-262(2-4) and 8.01-263(2) of the Code.

---

[5]        Upon information and belief, the staff/aides who collaborated with
Bertrand include Abigail Grace, who worked at the NSC until 2018 and was hired by
Schiff in February, Sean Misko, an NSC aide until 2017 who joined Schiff's committee
staff in August, Schiff's Chief of Staff, Jeff Lowenstein, and Deputy Chief of Staff,
Patrick Boland, Staff Director, Timothy Bergreen, Professional Staff Member, Thomas
Eager, General Counsel, Maher Bitar, Senior Counsel, Shannon Green, and/or Schiff
Staff Attorney, Daniel Goldman.  In her October 23, 2019 article, Bertrand represented
that Hill's testimony was "described to POLITICO by a person with direct knowledge of
her recent deposition".

## COUNT I – **DEFAMATION** *PER SE*

21.     Kash restates paragraphs 1 through 20 of his Complaint, and incorporates them herein by reference.

22.     The devastating effects of defamation are well-known:

> "A slander is preserved in no fixed or permanent form. It ordinarily soon fades out and is forgotten like the sound that carries it. But one who publishes a libel in a newspaper or pamphlet which circulates among many people, or even in a private letter, thereby places it in permanent form where it will be more likely to continue in existence and to be read by many people, and where he causes it to be published in a newspaper or magazine he thereby evidences his intention that the readers shall read it, so that the natural and probable effect of publishing a libel is far more permanent, extensive and injurious to the victim than the mere speaking of the words it contains to one or more persons."

*James v. Powell*, 154 Va. 96, 113-114, 152 S.E 539 (1930) (quoting *Maytag v. Cummins*, 260 F. 74, 80 (8th Cir. 1919)).

23.     From the beginning of recorded time, the law has faithfully protected a person's "absolute" right to an unimpaired reputation. In *Fuller v. Edwards*, the Virginia Supreme Court recognized that "[o]ne's right to an unimpaired limb and to an unimpaired reputation are, in each instance, absolute and has been since common law governed England. Indeed, an impaired reputation is at times more disastrous than a broken leg." 180 Va. 191, 198, 22 S.E.2d 26 (1942) (cited in *Gazette, Inc. v. Harris*, 229 Va. 1, 7, 325 S.E.2d 713 (1985) ("In Virginia, as in other states, the law of defamation historically has protected a basic interest. The individual's right to personal security includ[ing] his uninterrupted entitlement to enjoyment of his reputation.")); *Rosenblatt v. Baer*, 383 U.S. 75, 92-93 (1966) ("Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.' The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic

11

concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty").

24.     Between October 23, 2019 and November 8, 2019, the Defendants, acting in concert with Schiff, made, published and republished numerous false factual statements of or concerning Kash without privilege of any kind:

a.     On October 23, 2019, Politico published the following article written by Bertrand:



**NATIONAL SECURITY**

# Nunes protégé fed Ukraine info to Trump

Kashyap Patel, a senior National Security Council staffer with no official role on Ukraine policy, had a direct pipeline to the president.

Rep. Devin Nunes. | Pete Marovich/Getty Images

By **NATASHA BERTRAND**
10/23/2019 02:05 PM EDT



[https://www.politico.com/news/2019/10/23/nunes-protege-ukraine-trump-055837 (the "First Politico Piece")]. The First Politico Piece contains a legion of false statements and defamatory implications, including the following:

1.      "A protégé of Republican Rep. Devin Nunes was among those passing negative information about Ukraine to President Donald Trump earlier this year, fueling the president's belief that Ukraine was brimming with corruption and interfered in the 2016 election on behalf of Democrats";

2.      "Kashyap Patel, a longtime Nunes staffer who joined the White House in February, was so involved in the issue that at one point Trump thought he was in charge of Ukraine policy for the National Security Council, according to congressional testimony by Fiona Hill";

3.      "Several White House officials raised alarms internally about Trump undermining the U.S.' official policy of support for Ukraine in exchange for political favors, with former national security adviser John Bolton instructing Hill to inform White House lawyers about backchannel efforts he compared to a 'drug deal' … Patel's involvement demonstrates that the president had at least some support for the scheme from within the NSC, and has given House impeachment investigators yet another name to add to their witness list—a name they are already familiar with, given Patel's previous work in Congress to discredit the Russia investigation";

4.      "Patel joined the National Security Council's International Organizations and Alliances directorate in February and was promoted to a senior counterterrorism role around the same time as Trump's fateful call with Ukrainian

President Volodymyr Zelensky, in which he urged the newly elected leader to investigate Biden and 'get to the bottom of' Ukrainian interference in the 2016 election";

    5.    "Patel's name has been brought up in several recent depositions, according to another person with direct knowledge of the interviews, in connection with the shadow foreign policy campaign Trump allegedly directed in an effort to extract political favors from the newly elected Zelensky";

    6.    "Democrats have been especially interested in Patel's role in the Ukraine scandal given his intensive work as Nunes' top staffer on the House Intelligence Committee to discredit the FBI and DOJ officials investigating Russia's election interference";

    7.    "The findings of that parallel investigation were outlined in a 3.5-page memo that Patel, who also served as the panel's senior counsel, helped write,[6] despite warnings by the Justice Department that its release would be 'extraordinarily reckless' because it included classified information and could harm ongoing investigations";

    8.    Kash's "'unique access' to the West Wing, and the ease with which he has been able to interact directly with the president without NSC leadership's involvement, has also struck some as unusual, the former official said".

    b.    On October 23, 2019, Bertrand simultaneously republished the First Politico Piece to a new target audience – her 554,000 followers on Twitter:

---

[6]    The First Politico Piece links to and republishes an article written by Bertrand about Kash in 2018 while Bertrand was a staff writer for the *Atlantic*. [https://www.theatlantic.com/politics/archive/2018/01/the-men-behind-the-nunes-memo/551825/].

 **Natasha Bertrand** ✔
@NatashaBertrand

NEW/BREAKING: A protege of Devin Nunes, Kash Patel, was among those passing negative information about Ukraine to Trump, fueling the president's belief that Ukraine was brimming with corruption and interfered in the 2016 election on behalf of Democrats.

[https://twitter.com/NatashaBertrand/status/1187068014715375621].

        c.     On October 24, 2019, Politico republished the First Politico Piece as part of its so-called "Playbook". [https://www.politico.com/newsletters/california-playbook/2019/10/24/biden-to-snubs-cadems-again-zuckerberg-on-the-house-grill-newsom-on-trumps-political-vendetta-re-cap-and-trade-more-pg-e-shut-offs-begin-house-ethics-to-investigate-katie-hill-487501].

        d.     On October 30, 2019, Politico published a second article:



CONGRESS

# Testimony: Nunes acolyte misrepresented himself to Trump as Ukraine expert

Lt. Col. Alexander Vindman also testified on Tuesday that the National Security Council staffer, Kash Patel, fed the president disinformation about Ukraine.

https://www.politico.com/news/2019/10/30/nunes-acolyte-misrepresented-himself-to-trump-as-ukraine-expert-061763 (the "Second Politico Piece")]. The Second Politico Piece, also written by Bertrand, contains the following false statements and defamatory implications:

9.    "The decorated Army officer who testified to House investigators on Tuesday told lawmakers that a close associate of Republican Rep. Devin Nunes 'misrepresented' himself to President Donald Trump in an effort to involve himself further in Ukraine policy, according to two people familiar with his closed-door deposition";

10.   "Trump believed at the time that Kashyap Patel, a longtime Nunes staffer who joined the White House in February and had no discernible Ukraine experience or expertise, was actually the NSC's top Ukraine expert instead of Vindman";

11.   "And Vindman's exclusion sheds even more light on the unusual steps top NSC officials were taking as early as May to avoid angering or annoying Trump on Ukraine issues — and the unusual level of access Patel had to the president";

12.   "Vindman also testified that he was told Patel had been circumventing normal NSC process to get negative material about Ukraine in front of the president, feeding Trump's belief that Ukraine was brimming with corruption and had interfered in the 2016 election on behalf of Democrats";

13.   "It's still not clear what materials Patel was giving Trump, or where he was getting them. But he was not interacting with Ukraine experts at the State Department and Pentagon on the issue";

16

14.   "Patel had previously served as Nunes' top staffer on the House Intelligence Committee and worked to discredit the FBI and DOJ officials investigating Russia's election interference.  For that reason, Vindman was careful to not overtly criticize Patel so as not to anger Nunes — the ranking member of the intelligence panel — who floated in and out of the 10-hour deposition, according to a person familiar with his testimony".

e.   On October 30, 2019, Bertrand simultaneously republished the Second Politico Piece to a new target audience – her 554,000 followers on Twitter:



Natasha Bertrand ✔
@NatashaBertrand

NEW: Vindman was instructed not to debrief Trump on Zelensky's inauguration b/c Trump's advisers were worried it might confuse him—Nunes ally Kash Patel had "misrepresented" himself as NSC's Ukraine expert, despite no relevant experience, Vindman testified

[https://twitter.com/natashabertrand/status/1189589529138794496?lang=en].

f.   On July 30, 2019, Politico "reporter", Kyle Cheney ("Cheney"), acting as an agent of Politico in the ordinary course of Politico's business, republished Bertrand's false statements to a new target audience – Cheney's 81,600 followers on Twitter:



Kyle Cheney ✔  @kyledcheney · Oct 30
NEW from @NatashaBertrand: Former NUNES aide misrepresentedhimself to Trump as a Ukraine expert:

[https://twitter.com/kyledcheney/status/1189588318645903360].   Politico "cybersecurity

reporter", Eric Geller, similarly republished the Second Politico Piece:



> **Eric Geller** ✔
> @ericgeller                                    ⌄
>
> ## Kash Patel. Boy, I don't know.
> ## politico.com/news/2019/10/3...

[https://twitter.com/ericgeller/status/1189663266999541761].

> g.     The First and Second Politico Pieces were retweeted and

republished thousands, perhaps millions of times by third-parties, *see, e.g.*:



> **Adam Goldman** ✔
> @adamgoldmanNYT                                ⌄
>
> ## Kash Patel – @DevinNunes aide – back in the news.
> ## politico.com/news/2019/10/3... @NatashaBertrand
>
> Testimony: Nunes acolyte misrepresented himself to Trump as Ukraine expert
> 🔗 politico.com
>
> 1:48 PM · Oct 30, 2019 · Twitter for iPhone

[https://twitter.com/adamgoldmanNYT/status/1189599957386514432].





**Alexandra Chalupa**
@AlexandraChalup

All roads may lead back to Putin but quite a few of them
seem to first run through Devin Nunes.

Looks like Rudy Giuliani had a lot of support from a top
Nunes former trusted advisor planted inside the White
House who got caught playing "Ukraine expert."

Testimony: Nunes acolyte misrepresented himself to Trump as Ukraine expert
🔗 politico.com

5:41 PM · Oct 30, 2019 · Twitter for iPhone

[https://twitter.com/AlexandraChalup/status/1189658622067908608].    The defamatory
gist and sting of the First and Second Politico Pieces was instantaneously recognized by
those who read the Pieces on Twitter, *see, e.g.*:



**Devin Nunes' Alt-Mom**
@NunesAlt

Why is Kash Patel not arrested yet? Why is @DevinNunes so interested in undermining US-Ukraine foreign policy? The truth is coming out. Maybe that's why Devin is coming unhinged. 🕐

**POLITICO** ✓ @politico · Oct 30

The decorated Army officer who testified to House investigators yesterday told lawmakers that a close associate of Republican Rep. Devin Nunes "misrepresented" himself to Donald Trump in an effort to involve himself further in Ukraine policy politi.co/33cyLYg

1:43 PM · Oct 30, 2019 · Twitter for iPhone

> h.    On November 8, 2019, Schiff released the transcripts of Hill and Vindman's closed-door, secret interviews conducted in the Capitol Visitor Center. [https://twitter.com/RepAdamSchiff/status/1192858873130037248].    The transcripts demonstrate that Politico, Bertrand, Schiff, and his staffers misled the public in the First and Second Politico Pieces, and intentionally lied about the substance of Hill and Vindman's interviews.    Politico, Bertrand and Allbritton knew that Schiff had a preconceived agenda that he was actively promoting.    They knew about Schiff's extreme bias and hatred of President Trump.    Significantly, they also knew that Schiff was a wholly unreliable source because of his penchant to tell lies and to mislead. [*See, e.g.*, https://www.washingtonexaminer.com/opinion/op-eds/rep-jim-banks-house-democrats-decide-adam-schiff-can-lie-and-get-away-with-it; https://www.washingtonpost.com/politics/2019/10/04/schiffs-false-claim-his-committee-had-not-spoken-whistleblower/ ("**Schiff's false claim his committee had not spoken to**

the whistleblower")].[7]  Yet, hungry to support Schiff and to proselytize an unwitting American public in Schiff's false narrative, Politico, Bertrand and Allbritton published the First and Second Politico Pieces without even waiting for an accurate transcript of the Hill and Vindman interviews.[8]  Incredibly, the Defendants relied upon Schiff – a demagogue with an axe to grind against the President, against Congressman Nunes, and against Kash.

---

[7]    Politico, Bertrand and Allbritton published Schiff's false statements in spite of the well-known fact that the *Washington Post* had given Schiff **"4 Pinocchios"** for lying. [https://www.breitbart.com/the-media/2019/10/04/washpost-slaps-adam-schiff-with-four-pinocchios-for-flat-out-false-claim/].

[8]    If Politico, Bertrand and Allbritton had bothered to wait for the transcript, they would have learned that Hill **completely fabricated** the story that Kash had provided "materials on Ukraine" to the President.  Politico, Bertrand and Allbritton would also have learned that Schiff spoon-fed Hill grossly leading questions in a clear effort to fabricate a narrative about Kash.  But Politico, Bertrand and Allbritton were not interested in the truth.  They and Schiff had come to Hill for soundbites, and Hill did not disappoint.  In furtherance of the conspiracy, Hill gratuitously offered Schiff baseless opinions, such as "I was alarmed", "this is just not appropriate", "[i]t alarmed everybody", and "it's a red flag when somebody who you barely know is involved on ... one of our policy issues and is clearly providing ... materials outside of the line that we don't even know what those materials were."  If Politico, Bertrand and Allbritton had cared about Kash's reputation, they would have waited to read the transcript of Vindman's interview.  During his interview, Vindman confirmed that he had **no first-hand knowledge of anything**.  Vindman stated that <u>Hill</u> had told him that Kash was "representing himself as director of Ukraine".  Vindman also suggested that <u>Hill</u> had told him that Kash was "providing information ... to folks in the White House".  If they had waited to read the transcript of Vindman's interview, Politico, Bertrand and Allbritton would also have learned that even Vindman found the "whole episode" with Hill **"odd"**.  Vindman "didn't understand it".  Vindman did not even know who Kash allegedly was "representing himself as director of Ukraine" to.  Significantly, Vindman confirmed during his interview that Kash was held in "high regard":

> LT. COL. VINDMAN:  I think so.  I think so.  And, frankly, he seems to be in high regard, he's been since promoted to senior director.  At the time I knew him as a director.

25.     Defendants' reporting was categorically and knowingly false.  At no time prior to October 30, 2019 had Kash ever communicated with the President on any matters involving Ukraine.  Kash never supplied any Ukraine "materials" to the President.  Kash is proud of his record as a dedicated national security professional who is entrusted to handle our nation's most sensitive matters.  At no time did Kash stray from his mission to protect   the   homeland   in   service   to   the   President   and   the   NSC. [https://www.axios.com/national-security-council-staffer-denies-secret-ukraine-conversations-trump-e850964a-a743-4a81-94f4-6630f7f8cc77.html].

26.     Defendants' false statements constitute defamation *per se*.  The statements accuse and impute to Kash an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment.  Defendants' false statements also prejudice Kash in his profession as an attorney and senior advisor on the NSC.

27.     Kash is a private individual.   Defendants' false statements caused substantial harm to Kash and his reputation.

28.     Defendants made the false statements with actual or constructive knowledge that they were false or with reckless disregard for whether they were false. Defendants acted with actual malice and reckless disregard for the truth for the following reasons:

a.     Defendants intentionally employed a scheme or artifice to defame Kash with the intent to undermine the President's confidence in Kash and to further Schiff's impeachment inquisition. Defendants acted in concert with Schiff to accomplish

an unlawful purpose through unlawful means, without regard for Kash's rights and interests.

   b.  Defendants knew that Kash did not engage in the unlawful and salacious behavior described in the First and Second Politico Pieces and in Bertrand, Cheney, Goldman and Chalupa's tweets. Defendants relied on sources that were known to be inherently unreliable. Defendants fabricated quotes and "testimony". Defendants' made up statements out of whole cloth.

   c.  Defendants chose to manufacture and publish false and scandalous statements and use insulting words that were unnecessarily strong and that constitute violent, abusive and hateful language, disproportionate to the occasion, in order to undermine public confidence in Kash and smear Congressman Nunes and the President. The words chosen by the Defendants evince their ill-will, spite and actual malice.

   d.  Defendants did not act in good faith because, in the total absence of evidence, they could not have had an honest belief in the truth of their statements about Kash.

   e.  Defendants reiterated, repeated and continued to republish false defamatory statements out of a desire to hurt Kash and to permanently stigmatize him.

   f.  Defendants abandoned all journalistic integrity and violated their own code of ethics in order to further the conspiracy with Schiff. Defendants did not seek truth; report truth; minimize harm; act independently; and they most certainly were not transparent. [https://www.spj.org/ethicscode.asp].

   g.  Defendants refused to retract or clarify their false and defamatory statements, even after Schiff released the transcripts of Hill and Vindman's interviews.

29.     Defendants lacked reasonable grounds for any belief in the truth of their statements, and acted negligently in failing to determine the true facts.

30.     As a direct result of Defendants' defamation, Kash suffered presumed damages and actual damages, including, but not limited to, insult, pain, embarrassment, humiliation, mental suffering, injury to his reputation, special damages, costs, and other out-of-pocket expenses, in the sum of $25,000,000.00 or such greater amount as is determined by the Jury.

### COUNT II – <u>COMMON LAW CONSPIRACY</u>

31.     Kash restates paragraphs 1 through 30 of his Complaint, and incorporates them herein by reference.

32.     Beginning in October 2019 and continuing through the present, Politico and Bertrand combined, associated, agreed or acted in concert with Schiff or one or more of his staff/aides for the express purposes of injuring Kash, intentionally and unlawfully interfering with Kash's business and employment on the NSC, and defaming Kash.  In furtherance of the conspiracy and preconceived plan, the Defendants pursued a joint scheme with Schiff the unlawful purpose of which was to destroy Kash's reputation as an attorney and senior advisor to the President as a means of furthering Schiff's baseless Ukrainian quid pro quo hoax.

33.     The Defendants acted intentionally, purposefully, without lawful justification, and with the express knowledge that they were defaming Kash.  As evidenced by their use of Twitter to republish and spread poisonous lies to millions, the Defendants acted with the express and malicious intent to cause Kash permanent injury.

34.     The Defendants' actions constitute a conspiracy at common law.

35.     As a direct result of the Defendants' willful misconduct, Kash suffered actual damages, including, but not limited to, insult, pain, embarrassment, humiliation, mental suffering, injury to his reputation, special damages, costs, and other out-of-pocket expenses, in the sum of $25,000,000.00 or such greater amount as is determined by the Jury.

Kash alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession.   Kash believes that substantial additional evidentiary support, which is in the exclusive possession of Politico, Bertrand, Chalupa, Hill, Vindman, Schiff, Schiff's staffers and aides, Schiff's confederates, and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Kash reserves his right to amend this Complaint upon discovery of additional instances of Defendants' wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Kash Patel respectfully requests the Court to enter Judgment against the Defendants, jointly and severally, as follows:

A.     Compensatory damages in the amount of $25,000,000.00 or such greater amount as is determined by the Jury;

B.     Punitive damages in the amount of $350,000.00 or the maximum amount allowed by law;

C.   Prejudgment interest from October 23, 2019 until the date Judgment is entered at the rate of six percent (6%) per annum;

D.   Postjudgment interest at the rate of six percent (6%) per annum until paid;

E.   Costs;

F.   Such other relief as is just and proper.

## TRIAL BY JURY IS DEMANDED

DATED:      November 18, 2019

KASHYAP "KASH" PATEL

By:_____

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:    (804) 501-8272
Facsimile:     (202) 318-4098
Email:          **stevenbiss@earthlink.net**

*Counsel for Plaintiff, Kashyap "Kash" Patel*

26

# COMMONWEALTH OF VIRGINIA



HENRICO CIRCUIT COURT
Civil Division
4301 PARHAM ROAD
RICHMOND  VA
(804) 501-4546

Proof of Service

Virginia:
   In the HENRICO CIRCUIT COURT

Case number: 087CL19006745-00
Service number: 001
Service filed: November 18, 2019
Judge:

Served by: SPECIAL PROCESS SERVER
Style of case: KASHYAP KASH PATEL  vs POLITICO, LLC
Service on: POLITICO, LLC
            C/O THE CORPORATION TRUST CORP
            CORPORATION TRUST CENTER
            1209 ORANGE STREET
            WILMINGTON DE 19801

Attorney: BISS, STEVEN
          30 WEST MAIN STREET
          SUITE 102
          CHARLOTTESVILLE VA 22903

Instructions:

Returns shall be made hereon, showing service of Summons issued Monday, November 25, 2019 with a copy of the
Complaint and Petition filed Monday, November 18, 2019 attached.

Hearing date   :
Service issued: Monday, November 25, 2019

For Sheriff Use Only

# COMMONWEALTH OF VIRGINIA



### HENRICO CIRCUIT COURT
Civil Division
4301 PARHAM ROAD
RICHMOND  VA
(804) 501-4546

Summons

To: POLITICO, LLC
C/O THE CORPORATION TRUST CORP
CORPORATION TRUST CENTER
1209 ORANGE STREET
WILMINGTON DE 19801

Case No. 087CL19006745-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, November 25, 2019

Clerk of Court: HEIDI S BARSHINGER

by _____
(CLERK/DEPUTY CLERK )

Instructions:


Hearing Official:



Attorney's name:        BISS, STEVEN
30 WEST MAIN STREET
SUITE 102
CHARLOTTESVILLE VA 22903

# COMMONWEALTH OF VIRGINIA



HENRICO CIRCUIT COURT
Civil Division
4301 PARHAM ROAD
RICHMOND  VA
(804) 501-4546

Proof of Service

Virginia:
In the HENRICO CIRCUIT COURT

Case number: 087CL19006745-00
Service number: 002
Service filed: November 18, 2019
Judge:

Served by: SPECIAL PROCESS SERVER
Style of case: KASHYAP KASH PATEL  vs POLITICO, LLC

Service on: NATASHA BERTRAND
730 24TH STRETT, NW
APT 315
WASHINGTON DC 20037

Attorney: BISS, STEVEN
30 WEST MAIN STREET
SUITE 102
CHARLOTTESVILLE VA 22903

Instructions:

Returns shall be made hereon, showing service of Summons issued Monday, November 25, 2019 with a copy of the
Complaint and Petition filed Monday, November 18, 2019 attached.

Hearing date   :
Service issued: Monday, November 25, 2019

For Sheriff Use Only

# COMMONWEALTH OF VIRGINIA



### HENRICO CIRCUIT COURT
Civil Division
4301 PARHAM ROAD
RICHMOND VA
(804) 501-4546

Summons

To: NATASHA BERTRAND
730 24TH STRETT, NW
APT 315
WASHINGTON DC 20037

Case No. 087CL19006745-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, November 25, 2019

Clerk of Court: HEIDI S BARSHINGER

by _____
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:   BISS, STEVEN
30 WEST MAIN STREET
SUITE 102
CHARLOTTESVILLE VA 22903

# COMMONWEALTH OF VIRGINIA



HENRICO CIRCUIT COURT
Civil Division
4301 PARHAM ROAD
RICHMOND  VA
(804) 501-4546

Proof of Service

Virginia:
   In the HENRICO CIRCUIT COURT

Case number: 087CL19006745-00
Service number: 003
Service filed: November 18, 2019
Judge:

Served by: SPECIAL PROCESS SERVER
Style of case: KASHYAP KASH PATEL  vs POLITICO, LLC

Service on: ROBERT L ALLBRITTON
            1000 WILSON BLVD.
            SUITE 2700
            ARLINGTON VA 22209

Attorney: BISS, STEVEN
          30 WEST MAIN STREET
          SUITE 102
          CHARLOTTESVILLE VA 22903

Instructions:

Returns shall be made hereon, showing service of Summons issued Monday, November 25, 2019 with a copy of the
Complaint and Petition filed Monday, November 18, 2019 attached.

Hearing date   :
Service issued: Monday, November 25, 2019

For Sheriff Use Only

# COMMONWEALTH OF VIRGINIA



HENRICO CIRCUIT COURT
Civil Division
4301 PARHAM ROAD
RICHMOND  VA
(804) 501-4546

Summons

To: ROBERT L ALLBRITTON
1000 WILSON BLVD.
SUITE 2700
ARLINGTON VA 22209

Case No. 087CL19006745-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, November 25, 2019

Clerk of Court: HEIDI S BARSHINGER

by _____
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:     BISS, STEVEN
30 WEST MAIN STREET
SUITE 102
CHARLOTTESVILLE VA 22903